16 Cal.3d 442 (1976)
546 P.2d 322
128 Cal. Rptr. 34
HARPER SIBLEY, JR., Petitioner,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; CARLSBERG MOBILE HOME PROPERTIES, LTD.-'72, Real Party in Interest.
Docket No. L.A. 30496.
Supreme Court of California. In Bank.
March 8, 1976.
*444 COUNSEL
Ball, Hunt, Hart, Brown & Baerwitz, John R. McDonough and Howard B. Soloway for Petitioner.
No appearance for Respondent.
Donald L. Stone and Joseph Besnah for Real Party in Interest.
OPINION
RICHARDSON, J.
This case presents the question whether California courts may constitutionally assert jurisdiction over a nonresident individual solely by reason of his execution and alleged breach of a guaranty agreement regarding payment of monies owing to a California corporation. We have concluded that, under the circumstances in the present case, the guaranty transaction was not a sufficient basis on which to sustain personal jurisdiction over the nonresident guarantor, and that accordingly his motion to quash service of summons should have been granted.
The real party in interest herein, Carlsberg Mobile Home Properties, Ltd.  '72 (hereafter Carlsberg) is a limited partnership having its principal place of business in California. In December 1973, Carlsberg formed MTA-CMHPL, LTD. (hereafter MTA), a limited partnership, in California. The general partner of MTA is Sunrise Lakes, Inc. (hereafter Sunrise), a Georgia corporation. The purpose of MTA was to operate two mobile home parks in Georgia. Under the MTA partnership agreement, Sunrise promised to make certain monthly payments to Carlsberg. Petitioner Harper Sibley, a Florida resident, was one of three guarantors of Sunrise's performance of the MTA partnership agreement.
In December 1974, Carlsberg brought an action in California against petitioner and others alleging breach of the partnership agreement by Sunrise and breach of the guaranty by petitioner and others. Petitioner was served by certified mail in Florida, made a special appearance in California, and pursuant to Code of Civil Procedure section, 418.10, subdivision (a)(1), moved for an order to quash service of summons for lack of personal jurisdiction. The trial court denied the motion and *445 petitioner seeks mandate to review and set aside the trial court's order. (See Code Civ. Proc., § 418.10, subd. (c).)
Petitioner contends that Carlsberg has failed to meet its initial burden of showing that petitioner has the requisite minimum contacts with the State of California to justify California's assertion of jurisdiction over him. (See Buckeye Boiler Co. v. Superior Court (1969) 71 Cal.2d 893, 905, fn. 9 [80 Cal. Rptr. 113, 458 P.2d 57]; Arnesen v. Raymond Lee Organization, Inc. (1973) 31 Cal. App.3d 991, 995 [107 Cal. Rptr. 744].) We agree.
Petitioner was not a party to the MTA partnership agreement and took no part in its negotiation. His only connection with the transaction apparent from the record was as guarantor of the performance of a Georgia corporation. Petitioner signed the guaranty agreement in Florida and delivered it to another defendant, Peter Thun, who then took it to California. As indicated, petitioner is a resident of Florida; he has never been a resident of California, does not own any real or personal property in this state, and does not have any business interests or relations with California except as trustee of a testamentary trust owning property in Cambria, California. Sibley has not been physically present in this state since January 1973, when he was here in connection with a matter unrelated to the transactions before us.
(1) Under Code of Civil Procedure section 410.10, a California court may exercise jurisdiction over nonresidents on any basis not inconsistent with the United States or California Constitutions. This section manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations. (Buckeye Boiler Co. v. Superior Court, supra, 71 Cal.2d 893 at p. 898; Quattrone v. Superior Court (1975) 44 Cal. App.3d 296, 302 [118 Cal. Rptr. 548].) As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident individual so long as he has such minimal contacts with the state that "... the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" (Internat. Shoe Co. v. Washington (1945) 326 U.S. 310, 316-317 [90 L.Ed. 95, 101-103, 66 S.Ct. 154, 161 A.L.R. 1057], citations omitted; Cornelison v. Chaney, ante, p. 143 [127 Cal. Rptr. 352, 545 P.2d 264].)
One of the recognized bases for jurisdiction in California arises when the defendant has caused an "effect" in the state by an act or omission which occurs elsewhere. (Quattrone v. Superior Court, supra, 44 *446 Cal. App.3d 296 at p. 303; see also McGee v. International Life Ins. Co. (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199].) This ground for assertion of jurisdiction is discussed by the Judicial Council in its comment to section 410.10 of the Code of Civil Procedure reprinted in West's Annotated California Codes, page 472, in the following language: "A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an omission or act done elsewhere with respect to causes of action arising from these effects, unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable. [Citations.] When jurisdiction over an individual is based solely upon such act or omission, only a claim for relief arising from such act or omission may be asserted against the individual. [Citation.]" (Italics added.)
(2) Evidence was presented at the hearing on petitioner's motion to quash that the guaranty which petitioner executed induced Carlsberg, a California corporation, to enter into MTA, a new California limited partnership, and that Carlsberg would not have performed the MTA agreement without petitioner's guaranty. On this basis, despite petitioner's contrary assertions, the trial court could reasonably infer that the signing of the guaranty in Florida both was intended to cause and did cause an effect in California. In addition, it appears that the performance guaranteed by petitioner was the payment of certain moneys to a partnership located in California; thus, petitioner could have anticipated that the failure of this performance would have a further effect in California.
The mere causing of an "effect" in California, however, as acknowledged in the Judicial Council comment quoted above, is not necessarily sufficient to afford a constitutional basis for jurisdiction; notwithstanding this "effect," the imposition of jurisdiction may be "unreasonable." As was held in Internat. Shoe Co. v. Washington, supra, 326 U.S. 310, a suit may not be maintained where jurisdiction offends "`traditional notions of fair play and substantial justice.'" (Id., at pp. 316-317 [90 L.Ed. at pp. 101-103], citations omitted.)
Subsequent to International Shoe, the federal Supreme Court has amplified the standard by which to determine whether imposition of jurisdiction is constitutionally "unreasonable." In Hanson v. Denckla (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228], for example, the high court held that in those cases in which jurisdiction is sought on the basis of defendant's occasional activities, "... it is essential in each case that *447 there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (Id., at p. 253 [2 L.Ed.2d at p. 1298].) In Buckeye Boiler, supra, we reaffirmed the necessity for such an inquiry and asked the additional question whether, considering defendant's activity, extension of jurisdiction over him would be "fair."
In the present case, the record fails to disclose that petitioner purposefully availed himself of the privilege of conducting business in California or of the benefits and protections of California laws. Likewise, the record does not indicate that petitioner anticipated that he would derive any economic benefit as a result of his guaranty. Although petitioner may have reasonably foreseen that his execution or breach of the guaranty agreement would have some impact in this state, it does not appear that plaintiff Carlsberg assumed any obligations to petitioner which he might have sought to enforce in California. In this regard, petitioner's contacts with California seem even more minimal than those present in Belmont Industries, Inc. v. Superior Court (1973) 31 Cal. App.3d 281 [107 Cal. Rptr. 237] (hg. den.), in which jurisdiction was found to be unreasonable; unlike the present case, in Belmont, the nonresident defendant, which had negotiated and contracted with a California corporation for the purchase of certain drafting services, could have sought to enforce its contract in the California courts.
The present case is distinguishable from those recent California cases upholding jurisdiction over nonresident defendants who seek or obtain significant benefits from this activity in California. For example, in Buckeye Boiler Co. v. Superior Court, supra, substantial business was generated in this state which benefited the party over which jurisdiction was sought; in Michigan Nat. Bank v. Superior Court (1972) 23 Cal. App.3d 1 [99 Cal. Rptr. 823], goods purchased in California were financed by the nonresident defendant; in National Life of Florida Corp. v. Superior Court (1971) 21 Cal. App.3d 281 [98 Cal. Rptr. 435], contract negotiations by the parties occurred in California concerning the sale of shares of stock to California residents by the nonresident defendants; and in Quattrone v. Superior Court, supra, 44 Cal. App.3d 296, it was alleged that the nonresident defendant was involved in a conspiracy to defraud a California corporation for his own profit by submitting falsified financial records to this corporation. By contrast, in the present case, while other parties involved in this action had considerable contacts with California, there is no indication that petitioner intended to conduct business or in any other way directly or indirectly gain from dealings in *448 this state; the purpose of other parties cannot be imputed to petitioner for the purpose of assuming personal jurisdiction over him.
The United States Supreme Court has given further guidance in this area by indicating in McGee v. International Life Ins. Co., supra, 355 U.S. 220, that whether or not a state has passed special legislation relating to the subject matter of the action is significant in determining the reasonableness of jurisdiction over an out-of-state defendant. In McGee, the court upheld the jurisdiction of a California court over an out-of-state insurance company, justifying its ruling in part on the fact that California had enacted special legislation manifesting an exceptional interest in regulating activities by foreign insurance companies. (Id., at pp. 221-223 [2 L.Ed.2d at pp. 224-226].) Similarly in Quattrone v. Superior Court, supra, 44 Cal. App.3d 296, jurisdiction over a nonresident defendant was upheld by a Court of Appeal of this state largely because the end result of defendant's alleged conspiratorial conduct was the issuance of shares of stock, a subject of special California regulation. (Id., at pp. 306-307.)
In the matter before us a California limited partnership, in reliance upon the personal guaranty by a Florida resident, contributed its holdings of Georgia land to a new limited partnership for the purpose of acquiring and operating mobile home parks in Georgia. There are no aspects of this arms-length transaction which are subject to special regulation in California or in which California has otherwise manifested exceptional interest.
Thus, we conclude that petitioner's relationship to California, and the effects thereby caused in California, make the exercise of jurisdiction unreasonable in the present case.
Because petitioner's contacts with California are insufficient to justify jurisdiction, it is not necessary to undertake the additional process of balancing the inconvenience of defending the action in this state against the interests of plaintiff in suing locally and of the state in assuming jurisdiction. (See Cornelison v. Chaney, supra, ante, pp. 150-151; Buckeye Boiler Co. v. Superior Court, supra, 71 Cal.2d 893 at p. 899.)
We note, however, that the present litigation involves the performance of a limited partnership agreement in Georgia, and of petitioner's own agreement to guarantee the performance of a Georgia corporation. Thus, Georgia would appear to have jurisdiction over the entire controversy; at *449 the least, the action against petitioner can be conveniently litigated there or in Florida where petitioner resides.
Let a peremptory writ of mandate issue.
Wright, C.J., McComb, J., Sullivan, J., and Clark, J., concurred.
MOSK, J.
I dissent.
The issue is whether petitioner has the requisite minimum contacts with the State of California to justify California courts exercising jurisdiction over him. (Buckeye Boiler Co. v. Superior Court (1969) 71 Cal.2d 893, 905, fn. 9 [80 Cal. Rptr. 113, 458 P.2d 57].)
In denying petitioner's motion to quash, the trial court relied upon the following facts to justify retaining the case in California, rather than to compel the litigants to travel across the continent to the eastern seaboard for an adjudication of their rights. (Tiffany Records, Inc. v. M.B. Krupp Distributors, Inc. (1969) 276 Cal. App.2d 610, 615 [81 Cal. Rptr. 320].)
Carlsberg Mobile Home Properties, Ltd.-`72 is a limited partnership formed in California pursuant to the provisions of the California Corporations Code.
The general partner of the limited partnership is Carlsberg Resources Corporation, a California corporation.
Both the limited partnership and the corporate general partner maintain their business and principal office in the County of Los Angeles, State of California. Neither entity maintains an office in any other state.
Carlsberg, pursuant to an agreement, formed a limited partnership with Sunrise Lakes, Inc., a Georgia corporation as the general partner, to acquire and operate two mobile home parks in Georgia. This entity, known in short as MTA, was created in California, in accordance with provisions of the California Corporations Code.
The agreement upon which the lawsuit is based was negotiated and executed in California.
The deeds transferring to MTA title to the Georgia mobile home parks were executed in California.
*450 The agreement contemplated that payments thereunder were to be made in California.
The guarantee of petitioner was an essential consideration without which the MTA agreement would not have been executed in California.
Petitioner had knowledge that he was guaranteeing an obligation executed in California and payable in California, for the written guarantee of petitioner was obtained by, and given to, codefendant Peter Thun for delivery to plaintiffs in California.
The guarantee was in fact delivered to plaintiffs in California.
The transaction became effective only upon delivery of the guarantee in California. This is precisely the type of act, originally performed elsewhere but causing a specific effect in California, contemplated by Quattrone v. Superior Court (1975) 44 Cal. App.3d 296, 303 [118 Cal. Rptr. 548].
This litigation results from the claim that the general partner, and consequently its guarantor, has breached the terms of the MTA limited partnership agreement executed in California.
The foregoing facts  singly perhaps but in combination certainly  constitute substantially more than the minimum contacts required for jurisdiction over the parties by California courts. The trial court so found. A unanimous Court of Appeal approved. I agree with their assessment of the facts.
I would deny the writ.
Tobriner, J., concurred.
The petition of the real party in interest for a rehearing was denied April 7, 1976. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.